**Dr. J. Pierre BARBE**

v.

**CUMBERLAND CAPITAL CORPORA-
TION and/or Associates Financial
Services Company, Inc.**

Civ. A. No. 78–3401.

United States District Court,
E. D. Louisiana.

Sept. 25, 1979.

Patrick D. Breeden, New Orleans, La., for plaintiff.

Keith A. Rodriguez, Levith & Rodriguez, David S. Willenzik, McGlinchey, Stafford & Mintz, New Orleans, La., for defendant.

MEMORANDUM OPINION

EDWARD J. BOYLE, Sr., District Judge:

This controversy arises over alleged violations of the Consumer Credit Protection

Act, P.L. 90–321 (1968), 82 Stat. 146, as amended, 15 U.S.C. § 1601 *et seq.* and Regulation Z of the Federal Reserve Board, 12 C.F.R. 226 *et seq.* effective July 1, 1969.[1] The facts as stipulated are as follows: Plaintiff on October 18, 1977 entered an agreement with Associates Financial Services Company, Inc. (formerly Cumberland Capital Corporation) to finance the purchase of a Cadillac de Ville automobile acquired for plaintiff's personal use; defendant, a creditor, as defined by the Consumer Credit Protection Act, Truth in Lending Act (hereafter Act) Regulation Z, 226.2(s), took a chattel mortgage on the automobile to secure the loan, a disclosure of which was made to plaintiff.

The Louisiana law requires its Vehicle Commissioner, where a lien is outstanding and endorsed on the certificate of title of a vehicle, to deliver the original of the certificate to the "mortgagee of first rank who shall retain it until the full amount of such mortgage is liquidated." R.S. 32:708. The commissioner retains a copy and forwards another to the Parish of the domicile of the mortgagor for filing in the mortgage records of that Parish. R.S. 32:708. Defendant came into possession of the certificate by receipt thereof from the state agency.[2]

The disclosures by defendant to the plaintiff did not include the fact that defendant would retain the title as required by R.S. 32:708.

Plaintiff contends the holding of the certificate of title was the holding or retention by defendant of a security interest[3] the description or identification of which was not disclosed to plaintiff in violation of 12 C.F.R. 226.8(b)(5).[4]

Defendant claims retention of the certificate of title is not a security interest within the meaning of the Act and thus, identification and description of its existence need not be disclosed.

In *Elzea v. National Bank of Georgia,* 570 F.2d 1248 (5 Cir. 1978), the court held the presence of a security interest under Regulation Z, 12 C.F.R. 226.2(gg) should be determined "by examining the rights which the creditor has," based on the alleged security interest, *supra* at 1250. The *Elzea*

1.  The complaint also alleges violation of the Motor Vehicle Information and Cost Saving Act, P.L. 92–513, 86 Stat. 947, dated October 20, 1972, and sub–chapter IV–Odometer Disclosure, 15 U.S.C. § 1982 *et seq.* and regulations of the United States Department of Transportation, National Highway Traffic Safety Administration, 49 CFR 580.1 *et seq.* (*See* Record Doc. # 1, Plaintiff's Complaint, ℂ III(a) and (b).) However, the parties agreed to submit the case for adjudication on stipulations of fact on the truth in lending issues only.

2.  The assignment of title on the reverse of the certificate was not executed by the plaintiff.

3.  Regulation Z, 12 C.F.R. section 226.2(gg), defines a security interest as follows:

    (gg) "Security interest" and "security" mean any interest in property which secures payment or performance of an obligation. The terms include, but are not limited to, security interests under the Uniform Commercial Code, real property mortgages, deeds of trust, and other consensual or confessed liens whether or not recorded, mechanic's, materialmen's, artisan's, and other similar liens, vendor's liens in both real and personal property, the interest of a seller in a contract for the sale of real property, any lien on property arising by operation of law, and any

interest in a lease when used to secure payment or performance of an obligation.

4.  (5) A description or identification of the type of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates or, if such property is not identifiable, an explanation of the manner in which the creditor retains or may acquire a security interest in such property which the creditor is unable to identify. In any such case where a clear identification of such property cannot properly be made on the disclosure statement due to the length of such identification, the note, other instrument evidencing the obligation, or separate disclosure statement shall contain reference to a separate pledge agreement, or a financing statement, mortgage, deed of trust, or similar document evidencing the security interest, a copy of which shall be furnished to the customer by the creditor as promptly as practicable. If after–acquired property will be subject to the security interest, or if other or future indebtedness is or may be secured by any such property, this fact shall be clearly set forth in conjunction with the description or identification of the type of security interest held, retained or acquired.

court "noted as significant factors whether the creditor has an interest in the property and whether the alleged security interest helps to secure payment of the obligation," [5] *Edmondson v. Allen–Russell Ford, Inc.*, 577 F.2d 291, 294 (5 Cir. 1978) commenting on *Elzea*, supra at 1250.

█ Louisiana law governs the certificate of title to plaintiff's automobile. In *Turner v. Collector of Revenue*, 209 So.2d 301 (La.App. 4 Cir. 1968) the court remarked "[a] reading of the Vehicle Certificate of Title Act reflects it was passed to create administrative machinery for control of the sale and mortgage of vehicles required to be registered and licensed under the Louisiana Vehicle Registration License Tax Law," *supra* at 303. Addressing the purpose of the Act the court further stated, "[t]he act, to protect the purchaser from acquiring stolen property and to assure the validity of the chattel mortgage as a security device to the lender, provides that all records of transfers and mortgages must be kept in a central office, where certificates of title are issued." *Id.*

One function of the Act is to "afford the public a means of proper determination of ownership and encumbrances on vehicles subject thereto and to protect innocent purchasers who have relied thereon." *Ballard v. McBryde*, 275 So.2d 464, 467 (La.App. 2 Cir. 1973) and *Dinkins v. Lyons*, 295 So.2d 888, 891 (La.App. 2 Cir. 1974).

Furnishing third–party buyers notice of existing liens and assuring that proper ownership is vested in the seller does not give the lienholder–creditor any interest in the vehicle, nor does it provide a resource the creditor may use to make certain payment of the debt or to use in event of failure to pay.

█ The Vehicle Certificate of Title Act is also designed "to assure the validity of the chattel mortgage as a security device." *Turner v. Collector of Revenue*, supra at 303. Retention of the Certificate of Title and its necessity in providing marketable title, *see* LSA–R.S. 32:706 (West 1979 Supp.), guarantee the creditor of notification that a debtor has alienated the encumbered vehicle. Information of the conveyance allows the creditor to pursue any remedies available to him under the chattel mortgage. The creditor cannot accelerate a note given in payment for the encumbered vehicle because it holds the certificate of title. That power in the present case is conferred on defendant only by the chattel mortgage securing the note. Therefore, the creditor's holding the certificate of title does not confer a security interest in the property for the benefit of the creditor. The Fifth Circuit, in considering whether a confession of judgment clause in a Louisiana chattel mortgage constitutes a security interest requiring disclosure under 12 C.F.R. 226.8(b)(5), 226.2(gg) and 226.202, relied on a Federal Reserve Board Staff Opinion Letter [6] in adopting a portion of the

---

**5.** Federal Reserve Board Letter of January 11, 1977, No. 1145 by D. Edwin Schmelzer, Chief, Fair Credit Practices Section Consumer Credit Guide, paragraph 31,520, Commerce Clearing House, states the Board's opinion as follows:

[A] primary purpose of section 226.8(b)(5), requiring disclosure of a security interest, is to alert the customers at the outset of the transaction that his property might be used to discharge the debt which he has incurred, should it become necessary. Thus, since any device which could legally allow the creditor to reach a customer's property for repayment would come within the purview of this section, the answer to your question depends upon whether physical retention of the certificate gives the lender this right.

The federal agency that administers the Act notes that to fall within the disclosure require-

ments of 12 C.F.R. 226.8(b)(5) the retained certificate of title must bestow the right to foreclose on the encumbered property to fulfill the principal obligation.

**6.** 19. In January, 1974, the FRB staff published Opinion Letter 748 stating that a Louisiana confession of judgment clause should be disclosed under Regulation Z, § 226.202. However, on February 28, 1974, the staff published Opinion Letter No. 759 reversing its prior position, stating:

"Unfortunately, the original inquiry to which letter 748 was addressed did not elaborate in sufficient detail on the nature of a confession of judgment clause under Louisiana law so as to distinguish such clause from its customary characterization and usage in common law States. The inquiries referenced above have provided staff with sufficient information to

district court's holding[7] that

> ... a Louisiana confession of judgment clause, unlike a common law confession of judgment, gave the creditor no greater rights in the debtor's property than the "mortgage, lien and privilege" which was adequately disclosed, and therefore was not required to be disclosed as a security interest.

*Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511, 520 (5 Cir. 1976). The certificate of title retained by defendant here likewise grants no more rights in the debtor's property than the already disclosed chattel mortgage and defendant need not disclose the fact the certificate of title would be held by defendant until the primary obligation was extinguished.

Plaintiff has cited *Parnell v. Baham*, 228 So.2d 53 (La.App. 4 Cir.), *writ refused*, 255 La. 242, 230 So.2d 92 (1970) for the proposition that under Louisiana jurisprudence retention of a certificate of title is a security device. In *Parnell,* the question was whether ownership of twelve automobiles had passed to the vendee where the vendor retained the certificates of title to the cars. *See Parnell* at p. 55. The Court held that ownership did pass to the vendee. In *Parnell,* the vendee did not grant a chattel mortgage. Here there was such a chattel mortgage. It was not retention of the certificate of title here that precluded plaintiff's sale of the vehicle, it was the chattel mortgage, which, in pertinent part, provides that the mortgagor warrants and covenants to the mortgagee that "The Mortgagor shall, (a) not sell the property herein mortgaged without prior written consent of mortgagee...." which precluded sale of the vehicle and provided the security interest. And here it must be conceded that

ownership of the vehicle did pass to the plaintiff. We find *Parnell* to be inapposite. In *Charnita, Inc. v. Federal Trade Commission*, 479 F.2d 684 (3 Cir. 1973), also relied on by plaintiff, the court held that the withholding of a real property deed, together with judgment notes, constituted security interests and the seller was required to advise purchasers of the right to rescind granted by the Act, 15 U.S.C. 1635(a). Unlike retention of the certificate of title in the instant case, retention of the deed in *Charnita* deprived its purchaser of ownership. We think *Charnita,* too, is inapplicable.

Plaintiff also asserts that a security interest is created when the creditor "has given up [a] valuable privilege to the extent of his debt." *Elzea v. National Bank of Georgia,* supra at 1250. Plaintiff claims that because of defendant's retention of the certificate of title he was deprived of the ability to transfer a marketable or perfect title, a valuable privilege or right. As noted above, based on the chattel mortgage given on plaintiff's vehicle, it was disclosed that plaintiff had no right to transfer title in the automobile without defendant's consent. Holding of the certificate of title merely insured the disclosed rights of defendant under the chattel mortgage, but did not secure the debt or enhance the mortgage security therefor. As long as the chattel mortgage lien was recorded on and affected the title to the car, plaintiff's title, even though the certificate thereof be held by him, plaintiff, was not merchantable without discharge of the lien. Therefore, he was deprived of no right–by virtue of defendant's retention of the certificate– that he had not already been deprived of by having granted the chattel mortgage and the lien arising therefrom.

indicate that a Louisiana confession of judgment clause is commonly used as a procedural device in conjunction with a mortgage on real or personal property to permit a creditor to avail himself of executory process. In such cases, the clause creates no security interest beyond that taken, and presumably disclosed under the mortgage.
"Based upon these factors and our understanding that under Louisiana law a judgment executed before a default is void, we

believe that a Louisiana confession of judgment need not be disclosed as a security interest under the provisions of § 226.8(b)(5) and § 226.202 of Regulation Z ..." F.R.B. Letter No. 759, by J. Kluckman, February 28, 1974, CCH Consumer Credit Guide ⸙ 31,082. 539 F.2d n. 19 at 519–20.

7. *Meyers v. Clearview Dodge Sales, Inc.*, 384 F.Supp. 722, 727–28 (E.D.La.1974).

Accordingly, the plaintiff's complaint will be dismissed at his cost.